**Fill in this information to identify the case:**

Debtor 1  Eric L. Goldhahn

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of PENNSYLVANIA

Case number  25-14190-djb

## Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **What is the current creditor?** | Wells Fargo Bank, N.A. |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| | | |
| --- | --- | --- |
| 2. | **Has this claim been acquired from someone else** | [X] No |
| | | [ ] Yes. From whom? _____ |

| | | | |
| --- | --- | --- | --- |
| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | | Wells Fargo Bank, N.A. Default Document Processing MAC# N9286-01Y Name | Wells Fargo Bank, N.A. Attention: Payment Processing MAC# F2302-04C Name |
| | | PO Box 1629 Number       Street | 1 Home Campus Number       Street |
| | | Minneapolis MN 55440-9790 City          State          ZIP Code | Des Moines IA 50328 City          State          ZIP Code |
| | | Contact phone  800-274-7025 | Contact phone  800-274-7025 |
| | | Contact email  HLBKPOC@WELLSFARGO.COM | Contact email  HLBKPOC@WELLSFARGO.COM |

Uniform claim identifier (if you use one)
**WFCMGF2514190PAE51853197**
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | | | |
| --- | --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | [X] No [ ] Yes.  Claim number on court claim registry (if known) _____ | Filed on _____ MM/DD/YYYY |

| | | |
| --- | --- | --- |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | [X] No [ ] Yes.  Who made the earlier filing? _____ |

Official Form 410A **Mortgage Proof of Claim Attachment** Page **1** of **40**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. | Do you have any number you use to identify the debtor | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __3197__ |

| 7. | How much is the claim? | $ __177,929.96__ | **Does this amount include interest or other charges?**<br>[ ] No<br>[X] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>__MONEY LOANED__ |

| 9. | Is all or part of the claim secured? | [ ] No<br>[X] Yes    The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this Proof of Claim.<br>[ ]    Motor vehicle<br>[ ]    Other. Describe:    __814 PROVIDENCE RD, SECANE, PA 19018__<br><br>**Basis for perfection**: __Mortgage/Deed of Trust__<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $_____<br><br>**Amount of the claim that is secured:**    $ __177,929.96__<br><br>**Amount of the claim that is unsecured:**    $_____    (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ __65,611.77__<br><br>**Annual Interest Rate** (when case was filed) __3.12500__%<br>[X]    Fixed<br>[ ]    Variable |

| 10. | Is this claim based on a lease? | [X]    No<br>[ ]    Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| 11. | Does this claim involve a right to setoff? | [X]    No<br>[ ]    Yes. Identify the property _____ |

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [X] No<br>[ ] Yes. *Check one* | | **Amount entitled to priority** |
|---|---|---|---|---|
| | | [ ] Domestic support obligations (including alimony and child support) under 11 U S C §507(a)(1)(A) or (a)(1)(B) | | $_____ |
| | | [ ] Up to $3,800* of deposits toward purchase, lease or rental of property or services for personal, family, or household use 11 U S C §507(a)(7) | | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier 11 U S C §507(a)(4) | | $_____ |
| | | [ ] Taxes or penalties owed to governmental units 11 U S C §507(a)(8) | | $_____ |
| | | [ ] Contributions to an employee benefit plan 11 U S C §507(a)(5) | | $_____ |
| | | [ ] Other Specify subsection of 11 U S C §507(a)(___) that applies | | $_____ |
| | | *Amount are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment | | |

---

**Part 3:** **Sign Below**

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box*<br><br>[ ] I am the creditor<br>[X] I am the creditor's attorney or authorized agent.<br>[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  10/27/2025 _____<br>  MM/DD/YYYY<br><br>/s/ Jordan Katz _____<br>  Signature<br><br>Print the name of the person who is completing and signing this claim: |
|---|---|

| | |
|---|---|
| Name | Jordan Katz _____ |
| | First Name      Middle Name      Last Name |
| Title | Authorized Agent for Secured Creditor _____ |
| Company | Robertson, Anschutz, Schneid, Crane & Partners, PLLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 13010 Morris Road, Suite 450 _____ |
| | Number      Street |
| | Alpharetta, GA 30004 _____ |
| | City      State      ZIP Code |
| Contact Phone | 470-321-7112 _____   Email   jkatz@raslg.com _____ |

[ ] Noteholder is the owner of the note.
[X] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
[ ] Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 25-14190-djb |
| Debtor 1: | Eric L. Goldhahn |
| Debtor 2: | |
| Last 4 digits to identify: | 3197 |
| Creditor: | Wells Fargo Bank, N.A. |
| Servicer: | Wells Fargo Bank, N.A. |
| Fixed accrual/daily simple interest/other: | Fixed accrual |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $124,773.35 |
| Interest due: | $13,157.44 |
| Fees, costs due: | $4,805.66 |
| Other (MIP/PMI): | $0.00 |
| Escrow deficiency for funds advanced: | $0.00 |
| Less total funds on hand: | $0.00 |
| **Total debt:** | **$177,929.96** |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal due: | $8,97... |
| Interest due: | $12,5... |
| Prepetition fees due: | $4,80... |
| Escrow deficiency for funds advanced: | $35,1... |
| Projected escrow shortage: | $34,08... |
| Less funds on hand: | $0.00 |
| **Total prepetition arrearage:** | **$65,6...** |

## Part 5: Loan Payment History from First Date of Default

### Account Activity

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | K. Amount to fees or charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | | |
| | | | | STARTING BALANCE | | $0.00 | | | | | |
| 5/1/2022 | $1,339.00 | | | MONTHLY PAYMENT DUE | 5/1/2022 | $1,339.00 | | | | | |
| 5/13/2022 | | $669.50 | | MODIFIED PAYMENT | 5/1/2022 | $0.00 | $212.09 | $326.04 | $800.87 | | |
| 5/27/2022 | | $669.50 | | SUSPENSE | 6/1/2022 | $1,339.00 | | | | | |
| 6/1/2022 | $1,339.00 | | | MONTHLY PAYMENT DUE | 6/1/2022 | $1,339.00 | | | | | |
| 6/10/2022 | | $669.50 | | MODIFIED PAYMENT | 6/1/2022 | $0.00 | $212.65 | $325.48 | $800.87 | | |
| 6/24/2022 | | | | MISAPPLICATION REVERSAL | 6/1/2022 | $1,339.00 | ($212.65) | ($325.48) | ($800.87) | | |
| 6/24/2022 | | | | BAD CHECK REVERSAL | 6/1/2022 | $1,339.00 | | | | | |
| 6/24/2022 | | $669.50 | | SUSPENSE | 6/1/2022 | $1,339.00 | | | | | |
| 6/27/2022 | | | | PAYMENT FROM SUSPENSE | 6/1/2022 | $0.00 | $212.65 | $325.48 | $800.87 | | |
| 6/29/2022 | | | | MISAPPLICATION REVERSAL | 6/1/2022 | $1,339.00 | ($212.65) | ($325.48) | ($800.87) | | |
| 6/29/2022 | | | | BAD CHECK REVERSAL | 6/1/2022 | $1,339.00 | | | | | |
| 7/1/2022 | $1,339.00 | | | MONTHLY PAYMENT DUE | 6/1/2022 | $2,678.00 | | | | | |
| 7/8/2022 | | $669.50 | | SUSPENSE | 6/1/2022 | $2,678.00 | | | | | |
| 7/11/2022 | | | | PAYMENT FROM SUSPENSE | 6/1/2022 | $1,339.00 | $212.65 | $325.48 | $800.87 | | |
| 7/13/2022 | | | | MISAPPLICATION REVERSAL | 6/1/2022 | $2,678.00 | ($212.65) | ($325.48) | ($800.87) | | |
| 7/13/2022 | | | | BAD CHECK REVERSAL | 6/1/2022 | $2,678.00 | | | | | |
| 7/22/2022 | | $669.50 | | SUSPENSE | 6/1/2022 | $2,678.00 | | | | | |
| 7/25/2022 | | | | PAYMENT FROM SUSPENSE | 6/1/2022 | $1,339.00 | $212.65 | $325.48 | $800.87 | | |

## Mortgage Proof of Claim Attachment: Additional Page

| Date | Payment Amount | Funds Received | Amount Incurred | Late Charge | Description | Due Date | Amount | Col A | Col B | Col C |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/24/2022 | | | | | MISAPPLICATION REVERSAL | 6/1/2022 | $4,017.00 | ($212.65) | ($325.48) | ($800.87) |
| 8/24/2022 | | | | | BAD CHECK REVERSAL | 6/1/2022 | $4,017.00 | $212.65 | $325.48 | $800.87 |
| 8/31/2022 | | $1,339.00 | | | PAYMENT | 6/1/2022 | $2,678.00 | | | |
| 9/1/2022 | $1,339.00 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $4,017.00 | | | |
| 9/2/2022 | | $669.50 | | | SUSPENSE | 7/1/2022 | $4,017.00 | | | |
| 9/6/2022 | | | | | PAYMENT FROM SUSPENSE | 7/1/2022 | $2,678.00 | $213.20 | $324.93 | $800.87 |
| 9/8/2022 | | | | | MISAPPLICATION REVERSAL | 7/1/2022 | $4,017.00 | ($213.20) | ($324.93) | ($800.87) |
| 9/8/2022 | | | | | BAD CHECK REVERSAL | 7/1/2022 | $4,017.00 | | | |
| 9/16/2022 | | $669.50 | | | SUSPENSE | 7/1/2022 | $4,017.00 | | | |
| 9/19/2022 | | | | | PAYMENT FROM SUSPENSE | 7/1/2022 | $2,678.00 | $213.20 | $324.93 | $800.87 |
| 9/21/2022 | | $1,339.00 | | | MISAPPLICATION REVERSAL | 7/1/2022 | $4,017.00 | ($213.20) | ($324.93) | ($800.87) |
| 9/21/2022 | | | | | BAD CHECK REVERSAL | 7/1/2022 | $4,017.00 | | | |
| 9/30/2022 | | $669.50 | | | SUSPENSE | 7/1/2022 | $4,017.00 | | | |
| 10/1/2022 | $1,339.00 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $5,356.00 | $213.20 | $324.93 | $800.87 |
| 10/3/2022 | | | | | PAYMENT FROM SUSPENSE | 7/1/2022 | $4,017.00 | ($213.20) | ($324.93) | ($800.87) |
| 10/5/2022 | | | | | MISAPPLICATION REVERSAL | 7/1/2022 | $5,356.00 | | | |
| 10/5/2022 | | | | | BAD CHECK REVERSAL | 7/1/2022 | $5,356.00 | | | |
| 10/14/2022 | | $669.50 | | | SUSPENSE | 7/1/2022 | $5,356.00 | $213.20 | $324.93 | $800.87 |
| 10/16/2022 | | $1,339.00 | | | PAYMENT | 7/1/2022 | $4,017.00 | | | |
| 10/17/2022 | | | | $53.56 | LATE CHARGE | 8/1/2022 | $4,017.00 | $213.75 | $324.38 | $800.87 |
| 10/17/2022 | | | | | PAYMENT FROM SUSPENSE | 8/1/2022 | $2,678.00 | ($213.75) | ($324.38) | ($800.87) |
| 10/19/2022 | | | | | MISAPPLICATION REVERSAL | 8/1/2022 | $4,017.00 | ($213.20) | ($324.93) | ($800.87) |
| 10/19/2022 | | | | | BAD CHECK REVERSAL | 7/1/2022 | $4,017.00 | | | |
| 10/28/2022 | | | | | BAD CHECK REVERSAL | 7/1/2022 | $5,356.00 | | | |
| 11/1/2022 | $1,339.00 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $6,695.00 | | | |
| 12/1/2022 | $1,339.00 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $8,034.00 | | | |
| 12/23/2022 | | | | | MISAPPLICATION REVERSAL | 7/1/2022 | $8,034.00 | | | |
| 1/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $9,402.69 | | | |
| 2/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $10,771.38 | | | |
| 2/9/2023 | | | ($575.16) | | TAX DISBURSEMENT | 7/1/2022 | $10,771.38 | | | ($575.16) |
| 3/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $12,140.07 | | | |
| 3/7/2023 | | | ($2,587.19) | | TAX DISBURSEMENT | 7/1/2022 | $12,140.07 | | | ($2,587.19) |
| 4/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $13,508.76 | | | |
| 5/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $14,877.45 | | | |
| 5/8/2023 | | | ($2,683.00) | | INSURANCE DISBURSEMENT | 7/1/2022 | $14,877.45 | | | ($2,683.00) |
| 6/1/2023 | $1,368.69 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $16,246.14 | | | |
| 7/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $17,668.92 | | | |
| 8/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $19,091.70 | | | |
| 8/3/2023 | | | ($4,818.12) | | TAX DISBURSEMENT | 7/1/2022 | $19,091.70 | | | ($4,818.12) |
| 9/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $20,514.48 | | | |
| 10/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $21,937.26 | | | |
| 11/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $23,360.04 | | | |
| 12/1/2023 | $1,422.78 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $24,782.82 | | | |
| 1/1/2024 | $1,426.75 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $26,209.57 | | | |
| 1/1/2024 | $1,426.75 | | | | MONTHLY PAYMENT DUE | 7/1/2022 | $27,636.32 | | | |
| 2/1/2024 | $1,426.75 | | | | MONTHLY PAYMENT DUE | 7/1/2023 | | | | |

Case 25-14190-djb   Doc 16-1   Filed 10/30/25   Claim 2-1   Filed 10/30/25   Desc Main Document

## Mortgage Proof of Claim Attachment: Additional Page

| Date | Amount | Fee | Description | Date | Balance |
|---|---|---|---|---|---|
| 8/1/2024 | $1,426.75 | | MONTHLY PAYMENT DUE | 7/1/2022 | $36,196.82 |
| 9/1/2024 | $1,426.75 | | MONTHLY PAYMENT DUE | 7/1/2022 | $37,623.57 |
| 10/1/2024 | $1,426.75 | | MONTHLY PAYMENT DUE | 7/1/2022 | $39,050.32 |
| 10/25/2024 | | $159.00 | TITLE POLICY | 7/1/2022 | $39,050.32 |
| 11/1/2024 | $1,426.75 | | MONTHLY PAYMENT DUE | 7/1/2022 | $40,477.07 |
| 11/26/2024 | | $345.00 | ATTORNEY FEES | 7/1/2022 | $40,477.07 |
| 12/1/2024 | $1,426.75 | | MONTHLY PAYMENT DUE | 7/1/2022 | $41,903.82 |
| 1/1/2025 | $1,530.76 | | MONTHLY PAYMENT DUE | 7/1/2022 | $43,434.58 |
| 2/1/2025 | $1,530.76 | | MONTHLY PAYMENT DUE | 7/1/2022 | $44,965.34 |
| 2/5/2025 | | ($742.79) | TAX DISBURSEMENT | 7/1/2022 | $44,965.34 |
| 3/1/2025 | $1,530.76 | | MONTHLY PAYMENT DUE | 7/1/2022 | $46,496.10 |
| 3/10/2025 | | $26.00 | FILING COSTS | 7/1/2022 | $46,496.10 |
| 3/10/2025 | | $10.00 | FILING COSTS | 7/1/2022 | $46,496.10 |
| 3/10/2025 | | ($2,688.84) | TAX DISBURSEMENT | 7/1/2022 | $46,496.10 |
| 3/27/2025 | | $112.00 | PROCESS SERVICE | 7/1/2022 | $46,496.10 |
| 3/27/2025 | | $10.00 | FILING COSTS | 7/1/2022 | $46,496.10 |
| 4/1/2025 | $1,530.76 | | MONTHLY PAYMENT DUE | 7/1/2022 | $48,026.86 |
| 4/4/2025 | | $690.00 | ATTORNEY FEES | 7/1/2022 | $48,026.86 |
| 5/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $49,569.19 |
| 5/7/2025 | | ($3,744.00) | INSURANCE DISBURSEMENT | 7/1/2022 | $49,569.19 |
| 6/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $51,111.52 |
| 7/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $52,653.85 |
| 8/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $54,196.18 |
| 8/11/2025 | | $17.50 | FILING COSTS | 7/1/2022 | $54,196.18 |
| 8/11/2025 | | $172.50 | ATTORNEY FEES | 7/1/2022 | $54,196.18 |
| 8/11/2025 | | ($5,086.74) | TAX DISBURSEMENT | 7/1/2022 | $54,196.18 |
| 8/29/2025 | | $3,000.00 | SHERIFF FEES | 7/1/2022 | $54,196.18 |
| 9/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $55,738.51 |
| 9/3/2025 | | $159.50 | PROCESS SERVICE | 7/1/2022 | $55,738.51 |
| 9/16/2025 | | $50.00 | TITLE POLICY | 7/1/2022 | $55,738.51 |
| 10/1/2025 | $1,542.33 | | MONTHLY PAYMENT DUE | 7/1/2022 | $57,280.84 |
| 10/15/2025 | | | BK FILED | 7/1/2022 | $57,280.84 |



GOLDBAHN
Loan #:
MIN:
Case #:

**NOTE**

| MAY 31, 2012 | **HOLMES** | **PENNSYLVANIA** |
|---|---|---|
| [Date] | [City] | [State] |

**814 PROVIDENCE RD, SECANE, PA 19018**
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **ADVISORS MORTGAGE GROUP, LLC** and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED THIRTY-SIX THOUSAND FOUR HUNDRED FIFTY-ONE AND 00/100** Dollars (U.S. **$136,451.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **THREE AND THREE-FOURTHS** percent (**3.750%**) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

#### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **JULY 1, 2012**. Any principal and interest remaining on the first day of **JUNE, 2042**, will be due on that date, which is called the "Maturity Date."

#### (B) Place

Payment shall be made at **5114 ROUTE 33, WALL, NJ 07727** or at such place as Lender may designate in writing by notice to Borrower.

#### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$631.93**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [Specify] _____

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Pay to the Order of

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

SACRE MORTGAGE GROUP, LLC.
QUICKEN LIABILITY COMP.
BY: AMERICAN BANK, N.A. ATTORNEY IN FACT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 05-31-12                                                     BY: _____
BORROWER - ERIC L. GOLDHAHN - DATE -

BY: _____

*[Sign Original Only]*

Pay to the Order of

Without Recourse
Wells Fargo Bank, NA

By _____ C. A

Mary A. Seamans
Vice President

011

WELLS FARGO BANK, N.A.

PAY TO THE ORDER OF
WITHOUT RECOURSE
ADVISORS MORTGAGE GROUP, LLC.
A LIMITED LIABILITY COMPANY
SOVEREIGN BANK, N.A., ATTORNEY IN FACT

BY: _____

BARBARA L. BALLINGER
ASSISTANT VICE PRESIDENT

WELLS FARGO

*Final Documentation Transmittal*
*Form 5*

Loan Number: _____

Borrower's Name: Eric Goldhahn

To complete the above captioned loan, we hereby submit and enclose all of the following documents in accordance with the policies outlined in Section 505 of this Seller Guide.

☐ Original Loan Guaranty Certificate (VA)
☐ Original Recorded 1st Mortgage/Deed of Trust (03000)
☐ Original Recorded 2nd Mortgage/Deed of Trust (03001)
☑ Original Recorded Mortgage/DOT Modification Agreement (14800)
☐ Original Assignment of Mortgage/Deed of Trust (04600)
☐ Original Intervening Assignments (04601)
☐ Original Title Policy/Attorney's Certificate of Title (04700)
☐ Original Title Policy Endorsement (14337)
☐ Original Recorded CEMA (14334)
☐ Original Recorded UCC1 (14338)
☐ Original Recorded UCC3 (14375)
☐ Original Recorded Manufactured Housing Affidavit of Affixation (17112)
☐ Original Recorded Manufactured Housing Power of Attorney (17113)
☐ Original Recorded Manufactured Housing Rider *if separate from mortgage* (17114)
☐ Original Recorded Manufactured Housing Conversion / Surrender (17110)
☐ Other _____

Completed: _____  Date: 1/04/12

Phone: (732) 292-3133

*Please note that all Final Documents must be sent to the following address:
Wells Fargo Home Mortgage
Attn: Final Documents X2599-024
405 SW 5th Street
Des Moines, IA 50309

After Recording Return To:
**ADVISORS MORTGAGE GROUP, LLC**
**5114 ROUTE 33**
**WALL, NJ 07727**
**(732) 292-3133**

Prepared By:
**BETH HARRISON**
**ADVISORS MORTGAGE GROUP, LLC**
**5114 ROUTE 33**
**WALL, NJ 07727**
**(732) 292-3133**

RD BK05134-0871          **MG-MORTGAGE**
2012037846   06/20/2012 09:09:59 AM:4
RCD FEE: $102.50

**DELAWARE COUNTY**

**THOMAS J. JUDGE SR. ROD**

Property Address:
**814 PROVIDENCE RD**
**SECANE, PA 19018**

PIN:

[Space Above This Line For Recording Data]

## MORTGAGE

**GOLDHAHN**
Loan #:
MIN:
Case #:

THIS MORTGAGE ("Security Instrument") is given on **MAY 31, 2012.** The mortgagor is **ERIC L. GOLDHAHN** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. **ADVISORS MORTGAGE GROUP, LLC** ("Lender") is organized and existing under the laws of **NEW JERSEY**, and has an address of **5114 ROUTE 33, WALL, NJ 07727.** Borrower owes Lender the principal sum of **ONE HUNDRED THIRTY -SIX THOUSAND FOUR HUNDRED FIFTY-ONE AND 00/100** Dollars (U.S. **$136,451.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **JUNE 1, 2042.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **DELAWARE** County, Pennsylvania:
**PARCEL #**
which has the address of **814 PROVIDENCE RD, SECANE**, Pennsylvania **19018** ("Property Address");

TOGETHER WITH the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

FHA PENNSYLVANIA MORTGAGE - 05/08


Page 1 of 8

$9\rho$       4



Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate in Upper Darby Township, Delaware County, and State of PA, bounded and described as follows:

SITUATE on the Southeasterly side of Providence Road at the distance of 275 feet measured Southwestwardly from the Southwesterly corner of the said Providence Road and Oak Lane; thence extending along the Southeasterly side of the said Providence Road, South 67 degrees 00 minutes West, 50 feet to a point; thence South 21 degrees 28 minutes East, 101.97 feet to a point; thence North 67 degrees 32 minutes East, 50 feet to a point; thence North 22 degrees 28 minutes West, 102.44 feet to the Southeasterly side of the said Providence Road, the point and place of beginning.

BEING Known and designated as Lot Nos. 9 and 10 on Plan of Primos Manor.

BEING File No.

BOUNDED on the Southwest by Lot No. 8 on said Plan, on the Northeast by Lot No. 11 on said Plan and on the Southeast by Lot Nos. 29 and 30 on said Plan.

Being the same premises which James Cunningham and Ann Cunningham, his wife by Deed dated 11/26/1996 and recorded 12/11/1996 in the County of Delaware in Volume 1540 page 898 conveyed unto Neal D Serrano and Joanne M Serrano, husband and wife.

charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall be include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such

proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owing all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect

to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that is secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9,



Lender may initiate foreclose by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy of sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a Sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider          ☐ Graduated Payment Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____  5-31-12
- BORROWER - ERIC L. GOLDHAHN - DATE -

[Space Below This Line For Acknowledgment]

STATE OF Pennsylvania

COUNTY OF Delaware

On this, the 31st day of May 2012 , before me, a Notary Public , the undersigned officer, personally appeared

Eric L. Goldhahn

known to me (or satisfactorily proven) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Kristine K. Rhea

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE K. RHEA, Notary Public
Marple Twp., Delaware County
My Commission Expires February 4, 2013

My Commission Expires:

CERTIFICATE OF RESIDENCE: I do certify that the precise address of the within named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026.

Signature: Kristine K. Rhea

Agent on behalf of Mortgagee

FHA PENNSYLVANIA MORTGAGE - 05/08

Page 8 of 8

PREPARED BY: WELLS FARGO BANK, N.A.

When Recorded Return To:
ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN  55121-4400

RD BK06065-0256
2017051440    09/22/2017 01:02:55 PM:2
RCD FEE: $78.50

AS-ASSIGNMENTS

DELAWARE COUNTY
THOMAS J. JUDGE SR. ROD

Assessor's/Tax ID No. ▮▮▮▮▮▮

### CORPORATE ASSIGNMENT OF MORTGAGE

Delaware, Pennsylvania
"GOLDHAHN"

MIN #: ▮▮▮▮▮▮▮▮    SIS #: 1-888-679-6377

Date of Assignment: September 5th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ADVISORS MORTGAGE GROUP, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
Assignee: WELLS FARGO BANK, NA

I hereby certify the precise address of the within named Assignor is P.O. BOX 2026, FLINT, MI 48501-2026.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: ERIC L. GOLDHAHN  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ADVISORS MORTGAGE GROUP, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage:  05/31/2012 Recorded:  06/20/2012  In Book/Reel/Liber: 05134 Page/Folio: 0871 as Instrument/Document: 2012037846  In the County of Delaware, State of Pennsylvania.
Property Address: 814 PROVIDENCE RD, SECANE, PA  19018 in the Township of UPPER DARBY

I do certify that the precise address of WELLS FARGO BANK, NA is 1 HOME CAMPUS, DES MOINES, IA  50328
Attested By: _____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $136,451.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ADVISORS MORTGAGE GROUP, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
On __9-5-17__

By: _____
Carla M. Naughton
Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On __SEP 05 2017__, before me, __Jason Michael Nieling__, a Notary Public in the State of Minnesota, personally appeared __Carla M. Naughton__ Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ADVISORS MORTGAGE GROUP, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jason Michael Nieling
Notary Expires: 1/31/2020

JASON MICHAEL NIELING
NOTARY PUBLIC · MINNESOTA
MY COMMISSION EXPIRES 1/31/2020

(This area for notarial seal)

## DO NOT DETACH



Instrument Number: 2022028439
Volume/Page: RECORD BK 6825 PG 2601
Recorded Date: 05/04/2022 10:41:22 AM

Robert A. Auclair, Esq.
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

**Transaction Number:**
Collected By: porters
Document Type: AGREEMENTS
Document Page Count: : 14

**Return To (Simplifile):**
First American Title Insurance Company
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-5913

**Parcel ID:**

**Fees:**

**Instrument Number:** 2022028439
**Volume/Page:** RECORD BK 6825 PG 2601
**Recorded Date:** 05/04/2022 10:41:22 AM

| Fees: | |
|---|---|
| RECORDING FEES: | $37.50 |
| COUNTY IMPROVEMENT FUND: | $5.00 |
| ADDITIONAL PAGE FEE: | $20.00 |
| WRIT TAX: | $0.50 |
| **Total Fees:** | $63.00 |
| **Amount Paid:** | $63.00 |
| **Amount Due:** | $0.00 |

OFFICIAL RECORDING COVER PAGE
## DO NOT DETACH

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT

NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has
been corrected. The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA. PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL
INFORMATION.

This Document Prepared By:
**BRETT SHAW**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**
(800) 416-1472

When recorded mail to:
FAMS-DTO Rec
3 First American Way
Santa Ana, CA 92707
WELLS F ███
    GOLDHAHN      | PR DOCS
                  | E-Record

Tax/Parcel #: ████

_____ [Space Above This Line for Recording Data] _____

**Original Principal Amount: $136,451.00**         **Investor Loan No.** ████
**Unpaid Principal Amount: $99,266.95**            **Loan No: (scan barcode)**
**New Principal Amount: $125,620.62**
**Total Cap Amount: $26,353.67**

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **JANUARY 11, 2022**
Borrower ("I")[1]: **ERIC L GOLDHAHN**
Borrower Mailing Address: **814 PROVIDENCE RD, SECANE, PENNSYLVANIA 19018**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Wells Fargo Custom Loan Modification Agreement
████

Page 1

Case 25-10901-djb Doc 216-1 Filed 01/30/25 Desc Main Document Page 24 of 40
Delaware County Recorder of Deeds     Instrument # 2022026439          Page 3 of 15                    05/04/2022 10:41:22 AM

Exhibit A   Page 24 of 40

Lender or Servicer Address: 1 **HOME CAMPUS, DES MOINES, IA 50328**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **MAY 31, 2012** and
the Note ("Note") date of **MAY 31, 2012 and Recorded on JUNE 20, 2012 in
INSTRUMENT NO. 2012037846  BOOK 05134  PAGE 0871, of the OFFICIAL.
Records of DELAWARE COUNTY, PENNSYLVANIA**

Property Address ("Property"): **814 PROVIDENCE RD, SECANE, PENNSYLVANIA
19018**

Legal Description:

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

This Loan Modification Agreement ("Agreement") is made on **JANUARY 11, 2022** by and
between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may
require, and Lender. Borrower's obligations under the Note are secured by a properly
recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower
agrees that, except as expressly modified in this Agreement, the Note and the Mortgage
remain in full force and effect and are valid, binding obligations upon Borrower, except as
discharged in Bankruptcy, and are properly secured by the Property. Nothing in this
Agreement shall be understood or construed to be a satisfaction or release, in whole or in
part of the Borrower's obligations under the Loan Documents.

If my representations in Section 1, Borrower Representations, continue to be true in all
material respects, then this Agreement will, as set forth in Section 3, amend and supplement
(1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage
and Note together, as they may previously have been amended, are referred to as the "Loan
Documents." Capitalized terms used in this Agreement and not defined have the meaning
given to them in the Loan Documents.

### 1. **Borrower Representations.**

I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) 1 am in default under the
terms of the Loan Documents, and (ii) I do not have sufficient income or access to
sufficient liquid assets to make the monthly mortgage payments now or in the near
future; I did not intentionally or purposefully default on the terms of the Loan
Documents in order to obtain a loan modification:

Wells Fargo Custom Loan Modification Agreement



Page 2

B. I certify the Property is not condemned and is not vacant without the intent to re-occupy;

C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

D. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

E. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

## 2. Acknowledgements and Preconditions to Modification.

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

## 3. The Modification.

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **MARCH 1, 2022** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make all required payments as a precondition to this modification under a workout plan or trial period plan if required, the Lender has the right to reject this Agreement even if I have signed and returned this Agreement. The



Wells Fargo Custom Loan Modification Agreement

Page 3

first modified payment will ... ie on MARCH 1, 2022.

A. The new Maturity Date will be: **FEBRUARY 1, 2052.**

B. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date. This does not include unpaid late charges, valuation, property preservation and other charges not permitted under the terms of the Loan Modification Agreement. Permitted amounts and arrearages may include unpaid and deferred interest, fees, escrow advances and other costs less any amounts paid to the Lender but not previously credited to the Loan, collectively "Unpaid Amounts"; the portion of Unpaid Amounts capitalized is **$26,353.67.** The new principal balance of the Note will be **$125,620.62** (the "New Principal Balance") which includes the capitalized Unpaid Amounts. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of **3.1250%** will begin to accrue on the Interest Bearing Principal Balance as of **FEBRUARY 1, 2022** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **MARCH 1, 2022.** Interest due on each monthly payment will be calculated by multiplying the New Principal/Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 360 | 3.1250% | 02/01/2022 | $538.13 | $800.87 | $1,339.00 | 03/01/2022 |

**\*After the modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon



modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for the modified loan will be the minimum payment that will be due each month for the remaining term of the loan. The modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth.

4. **Additional Agreements.**

I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund the escrow account.

E. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full,



a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this section. I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays

Wells Fargo Custom Loan Modification Agreement

Page 6

me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies

Wells Fargo Custom Loan Modification Agreement

permitted by the Mortgagee without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender may only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of the property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Loan Modification Agreement.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan, if required and this Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien

Wells Fargo Custom Loan Modification Agreement

(if applicable) mortgage loan(s); (b) companies that perform support services for the Loan Modification Agreement; and (c) any HUD certified housing counselor.

N. I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this section shall be referred to as "Documents." I agree to deliver the Documents within fifteen (15) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

Q. Borrower must deliver to Wells Fargo Home Mortgage a properly signed Modification Agreement by JANUARY 26, 2022. If Borrower does not return a properly signed Modification Agreement by this date, Wells Fargo Home Mortgage

Wells Fargo Custom Loan Modification Agreement



Page 5

may deny or cancel the modification. If Borrower returns the properly signed Modification Agreement by said date, payments pursuant to the loan Modification Agreement are due as outlined in this Modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan Modification Agreement if Borrower fails to make the first payment due pursuant to this loan Modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document may not be accepted and another copy of the Agreement may be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

In Witness Whereof, I have executed this Agreement.

Borrower: ERIC L GOLDHAHN

01 - 25 - 2022

Date

## BORROWER ACKNOWLEDGMENT

**STATE OF** PA

**COUNTY OF** Delaware

On this, the 25 day of January 2022 before me LISA Marie Heyward , the undersigned officer, personally appeared **ERIC L GOLDHAHN**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

Notary Public

Printed Name: Lisa Marie He Yward

My commission expires: 6 22 2024

Commonwealth of Pennsylvania - Notary Seal
LISA MARIE HEYWARD - Notary Public
Delaware County
My Commission Expires Jun 22, 2024
Commission Number

Wells Fargo Custom Loan Modification Agreement

Page 11

In Witness Whereof, the Lender has executed this Agreement.

WELLS FARGO BANK, N.A.

Xee Vang

By    Vice President Loan Documentation    (print name)
(title)

2.15.2022
Date

_____ [Space Below This Line for Acknowledgments] _____

## LENDER ACKNOWLEDGMENT

**STATE OF** Minnesota

**COUNTY OF** Ramsey

This instrument was acknowledged before me

2 / 15 / 2022 (date) by _____ Xee Vang

(name(s) of person(s) as _____ Vice President Loan Documentation _____ (type of authority, e.g.,

officer, trustee, etc.) of WELLS FARGO BANK, N.A. (name of party on behalf of whom

the instrument was executed).

Notary Public

Printed Name: _____ Jhalissa Yates

JHALISSA YATES
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/26

My Commission Expires:
**JAN 3 1 2026**

Wells Fargo Custom Loan Modification Agreement

Page 12

EXHIBIT A

**BORROWER(S): ERIC L GOLDHAHN**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF DELAWARE
AND STATE OF PENNSYLVANIA, AND DESCRIBED AS FOLLOWS:

*UPPER DARBY TOWNSHIP (AF)*

SITUATE ON THE SOUTHEASTERLY SIDE OF PROVIDENCE ROAD AT THE DISTANCE OF 275
FEET MEASURED SOUTHWESTWARDLY FORM THE SOUTHWESTERLY CORNER OF THE
SID PROVIDENCE ROAD AND OAK LANE; THENCE EXTENDING ALONG THE
SOUTHEASTERLY SIDE OF THE SAID PROVIDENCE ROAD, SOUTH 67 DEGREES 00 MINUTES
WEST, 50 FEET TO A POINT; THENCE SOUTH 21 DEGREES 28 MINUTES EST, 101.97 FEET TO
A POINT; THENCE NORTH 67 DEGREES 32 MINUTES EAST, 50 FEET TO A POINT; THENCE
NORTH 22 DEGREES 28 MINUTES WEST, 102.44 FEET TO THE SOUTHEASTERLY SIDE OF
THE SAID PROVIDENCE ROAD, THE POINT AND PLACE OF BEGINNING.

BOUNDED ON THE SOUTHWEST BY LOT NO. 8 ON SAID PLAT, ON THE NORTHEAST BY LOT
NO. 11 ON SAID PLAN AND ON THE SOUTHEAST BY LOT NOS. 29 AND 30 ON SAID PLAN.

BEING THE SAME PREMISES WHICH JAMES CUNNINGHAM AND ANN CUNNINGHAM, HIS
WIFE BY DEED DATED 11/26/1996 AND RECORDED 12/11/1996 IN THE COUNTY OF DELAWARE
IN VOLUME 1549, PAGE 698 CONVEYED UNTO NEAL D. SERRANO AND JOANNE M.
SERRANO, HUSBAND AND WIFE.

ALSO KNOWN AS: 814 PROVIDENCE RD, SECANE, PENNSYLVANIA 19018

Wells Fargo Custom Loan Modification Agreement

Page 13

## CERTIFICATE OF RESIDENCE

### TITLE OF DOCUMENT
**MODIFICATION AGREEMENT (MORTGAGE)**

### BETWEEN:
**ERIC L GOLDHAHN** (assignor/Mortgagor/grantor)

### AND:
**WELLS FARGO BANK, N.A.** (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**

By: _____ 2·15·2022

*Print Name:* ___ Xee Vang ___

*Title:* ___ Vice President Loan Documentation ___

**WELLS FARGO**

Return Mail Operations
PO Box 14547
Des Moines, IA 50306-4547

**Escrow Review Statement**
*For informational purposes only*

| | |
|---|---|
| **Statement Date:** | October 17, 2025 |
| **Loan number:** | |
| **Property address:** | |
| | 814  PROVIDENCE RD |
| | SECANE PA 19018 |

ERIC L GOLDHAHN
814 PROVIDENCE RD
SECANE PA 19018-3625

## Customer Service

 **Online**
wellsfargo.com

 **Correspondence**
PO Box 10335
Des Moines, IA 50306

 **To learn more, go to:**
wellsfargo.com/escrow

**Telephone**
1-800-340-0473

**Hours of operation**
Mon – Fri 7 a.m. – 7 p.m. CT

We accept telecommunications relay service calls

---

*If you are in an active bankruptcy case or have received a discharge under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.  The informational summaries below are based on the terms of the loan.*

These amounts are governed by the terms of the loan unless otherwise reduced by an order of the bankruptcy court. Because the amounts billed for the escrow items can change over time, we review the escrow account at least once per year to ensure there will be enough money to make these payments. Once the review is complete, we send the escrow review statement, also known as the escrow account disclosure statement.

Here's what we found:

- **Required Minimum Balance:** The escrow account balance is projected to fall below the required minimum balance. This means there is a **shortage**. See box to the right and subsequent pages for additional information.

- **Payments:** As of the **November 1, 2025** payment, the escrow portion of the payment **increases**.

> This escrow review statement was completed as part of our preparation and filing of a proof of claim in a recently filed bankruptcy case, as required under applicable bankruptcy laws.
>
> The escrow account has a shortage of $3,525.27. At this time, the shortage will not impact the post-petition escrow payment, rather it is included in the arrearage amount of the proof of claim.

---

## Part 1 - Mortgage payment

**New Payment**  **The new total payment will be $1,560.00**

| | Previous payment through 10/01/2025 payment date | New payment beginning with the 11/01/2025 payment |
|---|---|---|
| **Principal and/or interest** | $538.13 | $538.13 |
| **Escrow payment** | $1,004.20 | $1,021.87 |
| **Total payment amount** | $1,542.33 | $1,560.00 |

**No action required**

Starting **November 1, 2025** the new payment amount will be **$1,560.00**

See the following pages and the additional enclosure for more detail.

## Part 2 - Payment calculations

For the past review period, the amount of the escrow items was $8,830.74. For the coming year, we expect the amount paid from escrow to be $12,262.37.

### How was the escrow payment calculated?

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the amounts by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods up through the date of the analysis.

### Escrow comparison

| | 01/24 - 12/24 (Actual) | 01/25 - 12/25 (Actual) | 05/25 - 10/25 (Actual) | 11/25 - 10/26 (Projected) | | # of months | | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| Property taxes | $8,255.44 | $8,518.37 | $5,086.74 | $8,518.37 | ÷ | 12 | = | $709.86 |
| Property insurance | $3,656.00 | $3,744.00 | $3,744.00 | $3,744.00 | ÷ | 12 | = | $312.00 |
| Total taxes and insurance | $11,911.44 | $12,262.37 | $8,830.74 | $12,262.37 | ÷ | 12 | = | $1,021.87 |
| Escrow shortage | $1,076.00 | $2,678.84 | $2,496.92 | $3,525.27 | ÷ | 0 | = | $0.00 |
| Total escrow | $12,987.44 | $14,941.21 | $11,327.66 | $15,787.64 | | | | $1,021.87 |

### Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in the account, we calculate whether the amount of the lowest projected escrow balance will be greater or less than the required minimum balance. This is determined by subtracting the required minimum balance from the lowest projected escrow balance. If the outcome is positive, there is an overage and an overage check may be issued to the customer or the bankruptcy trustee, based on applicable bankruptcy law. If it is negative, there is a shortage and the actual shortage plus any projected shortage, based on applicable bankruptcy law, will be included in the proof of claim.

| | Contractual | Post-Petition¶ | |
|---|---|---|---|
| Lowest projected escrow balance August 2026 | -$1,481.54 | -$2,043.67 | (Calculated in Part 4 - Escrow account projections table) |
| Minimum balance for the escrow account† | $2,043.73 | | |

¶Post-petition (post-filing) - Occurring after the filing of a bankruptcy petition.

†The minimum balance includes a cash reserve to help cover any increase in taxes and/or insurance as allowed by state laws or the mortgage contract. This account is set to a 2 month cash reserve amount. To calculate the cash reserve for the escrow account, we add the yearly escrow payments, and divide by 6.

## Part 3 - Escrow account history

### Escrow account activity from November 2024 to October 2025

| | Deposits to escrow | | | Payments from escrow | | | | Escrow balance | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Actual | Projected | Difference | Actual | Projected | Difference | Description | Actual | Projected | Difference |
| Nov 2024 | | | | | | | Starting Balance | -$22,931.14 | | |
| Feb 2025 | $0.00 | | | $742.79 | | | COUNTY TAXES | -$23,673.93 | | |
| Mar 2025 | $0.00 | | | $2,688.84 | | | CITY TAX | -$26,362.77 | | |
| May 2025 | $0.00 | $1,004.20 | -$1,004.20 | $3,744.00 | $3,656.00 | $88.00 | SAFECO INSURANCE COMPANY | -$30,106.77 | $3,958.45 | -$34,065.22 |
| Jun 2025 | $0.00 | $1,004.20 | -$1,004.20 | $0.00 | $0.00 | $0.00 | | -$30,106.77 | $4,962.65 | -$35,069.42 |
| Jul 2025 | $0.00 | $1,004.20 | -$1,004.20 | $0.00 | $0.00 | $0.00 | | -$30,106.77 | $5,966.85 | -$36,073.62 |
| Aug 2025 | $0.00 | $1,004.20 | -$1,004.20 | $5,086.74 | $4,962.67 | $124.07 | UPPER DARBY S.D./UPPER D | -$35,193.51 | $2,008.38 | -$37,201.89 |
| Sep 2025 | $0.00 | $1,004.20 | -$1,004.20 | $0.00 | $0.00 | $0.00 | | -$35,193.51 | $3,012.58 | -$38,206.09 |
| Oct 2025 (estimate) | $35,755.64 | $1,004.20 | $34,751.44 | $0.00 | $0.00 | $0.00 | | $562.13 | $4,016.78 | -$3,454.65 |
| Totals | $35,755.64 | $6,025.20 | $29,730.44 | $12,262.37 | $8,618.67 | $212.07 | | | | |

If the activity contains (estimate), then "deposits to" or "payments from" escrow or both are estimated amounts that have not actually occurred. These pre-petition amounts impact the proof of claim(s) filed in the bankruptcy case in the amount of $35,755.64. Pre-petition (Pre-filing) – occurring before the filing of a bankruptcy petition.

## Part 4 - Escrow account projections

### Escrow account projections from November 2025 to October 2026

| Date | Payments to escrow | What we expect to pay out | Description | Projected escrow balance Contractual | Post-petition | Balance required in the account |
|---|---|---|---|---|---|---|
| | | | Starting contractual escrow balance | -$35,193.51 | $0.00 | |
| | | | Outstanding pre-petition escrow payments | $35,755.64 | Not Applicable | |
| | | | Escrow disbursements between filing and payment change | $0.00 | $0.00 | |
| Oct 2025 | | | Projected period starting balance | $562.13 | $0.00 | $4,087.40 |
| Nov 2025 | $1,021.87 | $0.00 | | $1,584.00 | $1,021.87 | $5,109.27 |
| Dec 2025 | $1,021.87 | $0.00 | | $2,605.87 | $2,043.74 | $6,131.14 |
| Jan 2026 | $1,021.87 | $0.00 | | $3,627.74 | $3,065.61 | $7,153.01 |
| Feb 2026 | $1,021.87 | $742.79 | DELAWARE COUNTY | $3,906.82 | $3,344.69 | $7,432.09 |
| Mar 2026 | $1,021.87 | $2,688.84 | UPPER DARBY TOWNSHIP | $2,239.85 | $1,677.72 | $5,765.12 |
| Apr 2026 | $1,021.87 | $0.00 | | $3,261.72 | $2,699.59 | $6,786.99 |
| May 2026 | $1,021.87 | $3,744.00 | SAFECO INSURANCE COMPANY | $539.59 | -$22.54 | $4,064.86 |
| Jun 2026 | $1,021.87 | $0.00 | | $1,561.46 | $999.33 | $5,086.73 |
| Jul 2026 | $1,021.87 | $0.00 | | $2,583.33 | $2,021.20 | $6,108.60 |
| Aug 2026 | $1,021.87 | $5,086.74 | UPPER DARBY S.D./UPPER D | -$1,481.54 | -$2,043.67 | $2,043.73 |
| Sep 2026 | $1,021.87 | $0.00 | | -$459.67 | -$1,021.80 | $3,065.60 |
| Oct 2026 | $1,021.87 | $0.00 | | $562.20 | $0.07 | $4,087.47 |
| Totals | $12,262.44 | $12,262.37 | | | | |

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2022 Wells Fargo Bank, N. A. All rights reserved.
NMLSR ID          Member FDIC

# Your Escrow Review Statement has been updated

## Here's what you can find on it

**Part 1 – Mortgage payment**
Includes the previous and new mortgage payment amount.

**Part 2 – Payment calculations**
Shows how we calculated the escrow portion of the payment, as well as any overage or shortage the escrow account may have.

**Part 3 – Escrow account history**
Shows:
• How much was put into the escrow account.
• How much was paid out of the escrow account.
• If there's a difference between what we projected and what actually happened.

Some amounts in this section may be noted as an "estimate" if we hadn't yet received an expected deposit or made a planned payment from the escrow account at the time we completed your escrow review. These estimates assume that the deposits will be received and the payments will be made.

**Part 4 – Escrow account projections**
Shows what we expect to be deposited into the escrow account and what we expect to pay out of it in the future, as well as the contractual and post-petition balance after each bill is paid and the balance that's required in the account each month.

**wellsfargo.com/escrow**
• Learn more about how escrow accounts work.
• Watch the videos - for a quick way to better understand escrow accounts.
• Review answers to frequently asked questions.